(48 South. 771.)

No. 17,410.

STATE v. DAVIS.

(Feb. 1, 1909. Rehearing Denied March 15, 1909.)

1. CRIMINAL LAW (§ 736*) — TRIAL — RECEPTION OF EVIDENCE—PRELIMINARY PROOF—QUESTIONS FOR COURT.

It is for the trial judge, and not the jury, to determine, on a murder trial, whether an overt act of hostility has been sufficiently proved to open the door for evidence of prior difficulties, previous threats, and dangerous character.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1219; Dec. Dig. § 736.*]

2. HOMICIDE (§ 331*)—APPEAL—REVIEW—DISCRETION OF COURT — EXCLUSION OF EVIDENCE.

In determining this question, the judge may consider the evidence pro and con, and his ruling will not be disturbed except where the evidence to the contrary is clear and convincing. This is the settled jurisprudence of this court.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 698; Dec. Dig. § 331.*]

3. CRIMINAL LAW (§ 670*)—RECEPTION OF EVIDENCE—PRELIMINARY PROOF.

While evidence of prior threats is admissible, in a proper case, for the restricted purpose of showing that the deceased probably brought on the difficulty, such evidence is not admissible under a general offer to prove communicated threats and dangerous character, based on the theory that an overt act has already been proven.

[Ed. Note.—For other cases, see. Criminal Law, Dec. Dig. § 670.*]

(Syllabus by the Court.)

Appeal from Second Judicial, District Court, Parish of Webster; Richard Cleveland Drew, Judge.

Charley Davis was convicted of manslaughter, and he appeals. Affirmed.

Thomas Washington Robertson (William Richards Percy, of counsel), for appellant. Walter Guion, Atty. Gen., and John Nicholls Sandlin, Dist. Atty. (Roberts & Roberts and Ruffin Golson Pleasant, of counsel), for the State.

LAND, J. The defendant, indicted for murder and found guilty of manslaughter, has appealed from the sentence of the court.

On the trial of the case, after introducing evidence tending to prove that the homicide was committed in self-defense, and that the deceased on the night before had chased the defendant with an open knife, and after a deputy sheriff, a witness for the state, had testified that he found a large knife open under the body of the deceased, the defendant offered to prove by several witnesses that the deceased had made threats against the life of the defendant which had been communicated to him, and also that the deceased was a man of a dangerous and turbulent character. This testimony was objected to by the district attorney on the ground that no overt act had been proven, and the. objection was sustained by the court and the evidence excluded. Defendant's counsel excepted to the ruling, and reserved the bill of exception which is now before us. The recitals of this bill show that, prior to the offering of evidence to show communicated threats and dangerous character, four witnesses for the defendant had testified before the jury that "deceased was striking at defendant with an

open knife when the fatal shot was fired"; that two of these witnesses were the only ones who testified to having seen the beginning of the difficulty; that another witness had testified that the deceased had chased the defendant with an open knife the night before; that a deputy sheriff, a state witness, had testified that he found a large knife open under the body of the deceased, and in or near his hand; that all the witnesses for the state testified that the defendant, a railroad employé, was at his post of duty, and that the deceased had no business there; and that one witness, called by the state, testified that he heard one of the combatants call out four times, "Go away and let me alone," and that a witness for the defense testified that he had heard the same exclamation and that the words were used by the defendant.

The reasons assigned by the trial judge are as follows:

"That, while some testimony had been introduced by the defense to show an overt act, this testimony had been clearly shown to the satisfaction of the court as not being true. This conclusion was arrived at by taking into consideration the testimony of seven disinterested witnesses for the state, who swore that three shots were fired by the accused at the deceased, who was running away from the accused, and also the physical fact shows that the deceased was hit with only one shot, and that one caused his death, and struck deceased in the center of the back of the head.

"Among seven witnesses above mentioned, two were disinterested white boys, of good families and worthy of belief, and the witness H. E. McDow, for the defense, swore that when he noticed the deceased he was standing talking with the accused, and had his hand folded in front of him and kept them in that position, and if the deceased had a knife he never saw it. He did not testify as stated in defendant's bill of exceptions, and this witness, McDow, was the only white witness for the defense on this point.

"The seven witnesses above mentioned swore that when the deceased received the fatal shot he was running from the accused, who was pursuing him at a distance of from 15 to 20 feet behind deceased.

"The testimony of A. H. Phillips showed that it was some 30 minutes after the shooting that he saw deceased, and he didn't know who had been to the body before he got there; and it was shown that after accused had shot deceased down he drew his pistol and drove parties away from the body, and the evidence showed that near the scene of the killing, and before Mr. Phillips got there, friends of Davis, and witnesses for the defense and colaborers of his, were at or near the body.

"Taking into consideration the character of the witnesses, their interest in the case, and the physical fact, the court was firmly convinced that no overt act on the part of the deceased was shown, and for that reason excluded any evidence of threats and of dangerous character. There was no evidence shown that deceased owned the knife found by Phillips, or in any way to connect deceased with the knife."

It is to be noted that the evidence was not offered for the purpose of proving who was the aggressor in the difficulty, but to show that the defendant had good reasons to believe that the alleged hostile demonstration was made by the deceased with the intent to take life or to do great bodily harm.

In State v. Golden, 113 La. 801, 37 South. 761, this court said:

"It is for the trial judge, and not the jury, to determine whether an overt act by the deceased immediately preceding the killing has been sufficiently proved on the trial of the person accused of the homicide to open the door to evidence of prior difficulties between such accused and the deceased, and of prior threats, and of the dangerous character of deceased."

In that case, the undisputed evidence showed the commission of an overt act, and the verdict and sentence were set aside and the case remanded. In the case at bar the evidence was conflicting, and the judge, after considering the same, arrived at the conclusion that the overt act had not been sufficiently proven to admit evidence of prior communicated threats and dangerous character. From the judge's point of view the defendant shot the deceased while he was retreating, and after he had abandoned any purpose, which he may have had, of assaulting the accused. From the verdict of manslaughter, it may be inferred that the jury found that there was no overt act of hostil-

ity as testified by the witnesses for the defense.

In State v. Perioux, 107 La. 606, 31 South. 1018, this court said:

"There being a wide difference between evidence of an overt act and proof of the same, it was for the judge to decide, from the evidence offered in support of the overt act, whether a sufficient foundation had been laid for the admission of the testimony offered to prove previous threats."

In that case the evidence was conflicting, and this court refused to interfere. In State v. Feazell, 116 La. 264, 40 South. 698, there was the evidence of one witness tending to prove an overt act, but the judge did not believe the witness, and held that the alleged hostile demonstration had not been proven. This court refused to reverse the ruling of the trial judge, saying that in such a case "the evidence must be clear and convincing to authorize our interference."

In the case at bar we are not prepared to hold that the trial judge has abused the discretion vested in him. As was said in State v. Golden, 113 La. 791, 37 South. 757, the jurisprudence of this state on this subject is too firmly established to be open for further controversy in the courts, and that if a remedy is required it should be sought in the legislative department. Of course, the discretion vested in trial judges to rule out evidence of prior difficulties, previous threats, and of dangerous character should be exercised with great caution, and the benefit of the doubt should be given to the accused. The safe practice is to admit such evidence in doubtful cases, and leave questions of credibility to the jury.

As already stated, the recitals of the bill do not bring this case within the exception that prior threats may be proven for the restricted purpose of showing who was the aggressor in the difficulty.

Judgment affirmed.