BREAUX, C. J.
The defendants and the late Thos. Maddy were not on good terms.
The son of the deceased and one of the defendants had a quarrel on the day of the homicide that aggravated the had feeling existing.
On the trial of the defendants on the charge of murder, they sought to contradict one of the witnesses for the state by offering to read to the jury the testimony that the witness had given at the coroner’s inquest.
There was objection made and a ruling by the court, to which we will refer later.
The next point grew out of the offer by the defense of the testimony of the sister of the deceased, by whom the defense desired to prove statements of the witness in regard to the trouble which led to the homicide.
The charge of the court' to the jury also has given rise to considerable argument.
The defendants were arrested. The grand jury returned an indictment against R. J. Miller, John Arthur, and Will Arthur for murder.
They were arraigned and placed on their trial in July last. They were convicted of manslaughter.
Their plea was self-defense.
R. J. Miller was recommended by the jury to the mercy of the court. John Arthur was sentenced to the state penitentiary for a period of seven years, Will Arthur for five years, and R. J. Miller was sentenced for a period of two years; in addition, each to pay a fine of $1 and costs.
The case is before ns on three bills of exceptions, and, in addition, objections to the charge urged for the first time on appeal in argument; also, an assignment of errors filed in this court.
No exception was taken to the charge.
The motion for a new trial was made on the ground frequently urged and overruled on appeal, to wit, contrary to the law and the evidence.
The motion for a new trial on that ground presented no issue for decision in this case.
We take up for decision the different bills of exceptions taken during the trial.
The first is to the exclusion of evidence as to what took place in the morning of the day of the homicide in the field of one of the defendants.
The witness for the state, Annie Shines, said that she saw deceased running up the road toward his house and defendants following him with their guns.
*257 On cross-examination she was asked by the defense ahont her testimony before the coroner’s jury. This testimony was read to her, and she was asked if it was hers, to which she replied affirmatively.
The bill of exceptions prepared by counsel for the defense then recites that the defendants offered this evidence, taken before the coroner's jury, to impeach her testimony given on the trial.
The state, the bill stated, objected on the ground that no predicate had been laid for impeaching the testimony of this-witness.
The court inserted the following in the bill of exceptions:
“No such bill of exceptions was reserved.” “Subsequently they called Mr. Malone, a member of the coroner’s jury, and offered to prove what questions were asked,”
—and that the witness had testified as stated before the coroner’s jury.
The state objected on the ground that it was hearsay. The court sustained the objection and added:
“Counsel for defendants are in error. No bill of exceptions was taken.”
The testimony of this witness it seems in some way went to the jury.
In any case, defendants were not prejudiced. The jury heard the testimony which they contend impeached her testimony.
At any rate there is no evidence before us taken in the manner pointed out by the statute when attorneys and the trial judge differ in regard to certain facts. The judge, as before stated, said no bill of exceptions was taken. This is enough to end all discussion.
We might stop here.
We will go further and state that at another time, while witness was testifying, similar 'offer of testimony of said witness was made. Again objection was raised. The court refused to admit it.
The contention of the state in connection with the second objection is that the defense attempted to prove a “previous difficulty, threats, and the violent character of the deceased,” without first showing an overt act or hostile demonstration of the deceased.
The defense at this point insists that the purpose was not as just stated (to prove previous difficulty, threats, and violent character of the deceased), but that the purpose in offering the testimony was to assist the jury and enable it to form its own conclusions as to the attitude of the deceased and prove who was the aggressor in the difficulty.
On. this particular point, and with regard to the testimony just stated, the statement of the trial judge, made part of the bill of exceptions, is:
The judge states:
“All the evidence went to the jury, substantially.”
There was no bill of exceptions taken, the judge reiterated.
Furthermore, although no bill of exceptions was taken, the court allowed the jury to hear the testimony.
There was no prejudicial error. The defendánts have had the benefit of the testimony. That is all they could expect.
This brings us to a consideration of defendants’ next bill of exceptions in the order they were reserved in the district court.
A witness, Mrs. Miller, sister of the deceased, and the mother of the young man to whom she talked some time after the homicide, was asked as a witness by defendants' counsel if it was not a fact that near the body of the deceased she had said to her son, pointing at the time to a pistol, that that was the cause of the trouble, and that she had that morning begged her brother, the deceased, to go home and let the trouble drop and behave himself.
The state objected, and urged as reason against the admission of the testimony: That it was a post mortem declaration and hearsay, self-serving; that the purpose was to *259 impeach a witness; that the foundation for such impeachment had not been laid; and that the testimony was not material.
The defense still insisted that it was to prove who was the aggressor.
The court sustained the objection of the state above stated on the ground that the “purpose of the defense was to prove prior threats by the deceased against John Arthur, one of the defendants,” and that it was not, as stated in the bill “to enable the jury to determine who was the aggressor,” that it was a conversation or an admonition to the son by the mother, “no foundation had been laid to prove threat, and, if this testimony was offered for the purpose of impeaching witness, it was an immaterial point and not subject for impeachment.”
With this statement of the trial court (unless we should ignore well-established rules of practice) we are constrained to maintain the ruling made by him. Besides, it was mere hearsay testimony. The remark of the mother to her son was made about two hours before the homicide.
There is no question but that a predicate must be laid.
See State v. Golden, 113 La. 791, 37 South. 757; State v. Feazell, 116 La. 266, 40 South. 698.
Taking the bill of exceptions as it reads, and conceding for the moment that the statement of the per curiam is erroneous in point of fact, it is not by any means evident that the court erred. The bill of exceptions must state the facts needful to a decision of the point of law involved. This has not been done, and, furthermore, no attempt was made to prove that the facts were as the defense contended.
The scope of the question propounded, which we have quoted above, sought to prove the admonition of the witness to her son, and does not give rise to the inference of threat or intention to do bodily harm, nor does it appear that there -was anything about it having the tendency to prove who was the aggressor.
Had the question been answered categori-' cally, it would only have shown, as we take it, the words of a counseling mother, and not what the deceased had said or done.
We leave this point with the statement that the case does not fall within the grasp of State v. Barksdale, 122 La. 788, 48 South. 264. The facts are not the same. There is no question here of the aggressor in a case of homicide under the circumstances disclosed in the cited case, supra.
This brings us to a consideration of the objections to the charge delivered to the jury.
No exception was taken to the charge at any time. It follows that no exception was reserved in the matter of the charge.
True, the judge was requested to give his instructions to the jury in writing.
He conceived that, as no objection had been made to the charge by the defense, there was no necessity of handing it to the clerk to be filed and to form part of the record.
The charge was filed some time after the case had been tried. Certiorari proceedings were instituted relating to the charge.
The charge is before the court.
It is criticised by the defense in argument at bar and in the brief.
We have considered the point urged by the defense against the charge, and, after mature deliberation, have arrived at the conclusion to give application to the rule which requires objections to be timely taken and a bill of exceptions reserved.
In some of the decisions of this court, it was held that gross and unjust errors, in a spirit of humanity, would be considered whether a bill of exceptions was taken or not.
Even from that point of view, we have found no prejudicial error in the charge. Nothing was said in the charge erroneous to *261 such an extent as renders it proper.to consider the point urged.
The most extreme view expressed in opinions of this court on the subject of examining the charge would not afford ground to review the charge.
Feeling certain, from that point of view, of the correctness of our conclusion, we feel doubly correct when we consider the decision in the case of State v. Bush, 117 La. 463, 41 South. 793.
It is not our purpose to change a prior rule laid down upon the subject. Our only object is to express the confidence we feel in the present case.
The rule which requires objections to the charge and a bill of exceptions is well sustained by precedent.
The district judge should be given the opportunity to correct erroneous instructions. State v. McClanahan, 9 La. Ann. 210; State v. Chopin, 10 La. Ann. 458; State v. Beaird, 34 La. Ann. 105; State v. Sheard, 35 La. Ann. 543; State v. Ferguson, 37 La. Ann. 51; State v. Melton, 37 La. Ann. 77.
The rule is not by any means confined to the jurisprudence of this state. The Century Digest has an array of citations of decisions as precedent.
The courts of last resort of a number of the states have rendered decisions sustaining the rule.
Very few rules in criminal procedure are sustained by as many decisions.
We have followed the subject to this point to cite authorities favorable to the rule, although we might have rested the decision on this fioint on precedent holding that in case of fundamental error, where gross and extremely prejudicial, the court may inquire into it, although no bill of exceptions has been taken. Here there is no such error.
The decisions last cited by reference to Century Digest from other jurisdictions make no exception. They hold that objection must be raised before verdict.
We have noted above that an assignment of errors had been filed.
As defendant took no bills of exceptions, as required, the assignment of errors does not supply the want of a timely objection and a bill of exceptions.
In this instance the assignment is not the equivalent of such a bill. The want of a bill is not cured by the assignment in matter which we hold should have been excepted to in order to afford ground of defense.
It only remains for us to affirm the verdict and judgment.
For reasons stated, they are affirmed.